UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**ROBERT R. AUSTIN,**

    **Plaintiff,**

v.                                                         Case No. 8:05-cv-1531-T-TBM

**JO ANNE B. BARNHART,**
**Commissioner of the United States**
**Social Security Administration,**

    **Defendant.**
                                             /

**O R D E R**

The Plaintiff seeks judicial review of the denial of his claims for a period of disability, Social Security disability benefits, and Supplemental Security Income payments. For the reasons set out herein, the decision is affirmed.

I.

Plaintiff was forty-eight years of age at the time of his administrative hearing. He has a high school education with at least two years of college. His past relevant work was as a civil drafter CAD (computer-aided drafter), user support analyst, and environmental control technician. Plaintiff applied for disability benefits and Supplemental Security Income payments in May 2002, alleging disability as of October 13, 2000, by reason of diabetes, fibromyalgia, nerve damage, anxiety, and depression. The Plaintiff's applications were denied originally and on reconsideration.

The Plaintiff then received a *de novo* hearing before an Administrative Law Judge (hereinafter "ALJ"). In essence, Plaintiff claimed that he could no longer work at any job because he was in almost constant pain and had problems with allergies. Plaintiff testified that he has pain in the upper back, pain that shoots down through his arms into his hands, osteoarthritis in his right hip, and chronic problems with his joints. He described sharp pain and said that sometimes even a fan blowing on his arms causes his arms to hurt and/or burn. He also has shooting pain in both sides that travels through his fingers, wrist, forearm and neck and then goes down his other side. Plaintiff also testified that sometimes the pain will go up the back of his neck to the top of his head and he'll have something like a migraine. He testified further that he injured his ribs when he fell out of a boat in March 2004. Plaintiff also described pain in his shoulder blades, chronic knee pain, and lower back pain, for which he got epidurals. According to Plaintiff, he also has asthma, allergies, and problems sleeping. He takes medication to help him sleep and for pain and migraines.

Regarding his past work, Plaintiff testified that he last worked in either 2001 or 2002, he was not sure about the dates. He has worked as a CAD operator, a computer analyst at a help desk and as an engineering technician. At the time of the hearing, Plaintiff was enrolled in college on a part time basis.

Plaintiff testified to limited daily activities. He lives with his parents and does not help with the cooking, laundry or shopping. According to Plaintiff, he has mostly "bad days," and his condition has gotten worse since around November 2003. He said that he sometimes needs help putting on his socks and shirt, and he is unable to wash his back. He has to be

careful putting his arms above his shoulders, and he does not lift even light objects above his head because of pain.  Plaintiff complained that he has almost no stamina.  He is not able to swim anymore because it is too painful on his arms, and he can no longer wear a backpack.  By his account, he cannot lift much without feeling pain, even lifting/carrying a few folders can cause him pain, and while he is able to walk, he has to walk at his own pace because doing otherwise causes pain in his lower back, hips, and knees.  When questioned by the ALJ about the reported activities of canoeing, boating, riding go-carts, and going to the movies, Plaintiff responded that he had not done those activities in quite some time, maybe a couple of years.  See Plaintiff's testimony (R. 345-66).

   The ALJ also took testimony from Steven Simon, a vocational expert (hereinafter "VE").  The expert first testified upon an assumption of a younger individual with two years of college education and the ability to perform medium exertional work that did not involve frequent overhead reaching or pulling and more than occasional stooping, climbing, kneeling, crouching and crawling.  Based on that assumption, the VE testified that the individual could perform all of Plaintiff's past relevant work, i.e, that of a civil drafter CAD, user support analyst, and environmental control technician.  On the next assumption, the expert was asked to assume an individual capable of performing sedentary exertional work but who was unable to complete tasks as assigned and required more frequent breaks than are typically allowed.  Based on that assumption, the VE testified that the individual could not perform Plaintiff's past work or any work existing in the national economy.  Finally, upon questioning from

Plaintiff's attorney, the expert testified that no work would be available if the individual had to be off two days per week due to sleeping problems. See VE's testimony (R. 367-70).

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed adequately by the parties' memoranda and are addressed herein as necessary.

By his decision of September 24, 2004, the ALJ determined that while Plaintiff has severe impairments related to obesity with non-insulin dependent diabetes with early neuropathy and probable fibromyalgia suspect, disc protrusion of thoracic area of spine and cervical spondylosis, he nonetheless had the residual functional capacity to perform a significant range of up to medium exertional work with occasional postural functions and the avoidance of frequent overhead work. Upon this finding, the ALJ concluded that Plaintiff could perform past relevant work as a civil drafter CAD, user support analyst and environmental control technician economy. Upon this conclusion, the Plaintiff was determined to be not disabled. (R. 25-26). The Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.

## II.

In order to be entitled to Social Security disability benefits and Supplemental Security Income payments, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42

U.S.C. § 423(d)(1)(A).  A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  Id. at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards.  See id. at § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996).  The Commissioner must apply the correct law and demonstrate that she has done so.  While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.  Keeton v. Dep't of Health & Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994) (citing Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses.  Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971).  Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence.  Celebrezze v. O'Brient, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the

record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. Miles, 84 F.3d at 1400; Bloodsworth v. Heckler, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983).

III.

The Plaintiff raises three claims on this appeal. As stated by the Plaintiff, they are as follows:

(1) The Commissioner erred in [her] evaluation of Plaintiff's mental complaints;

(2) The ALJ failed to comply with the Commissioner's policies in evaluating the severity of Plaintiff's fibromyalgia under SR 99-2p; and

(3) The Commissioner erred by not accurately assessing Plaintiff's credibility.

By his first claim, Plaintiff argues that the ALJ erred by not ordering an updated consultative psychiatric examination to determine the severity of his depression and resulting limitations. By his account, there is an absence of evidence establishing his mental residual functional capacity since January 14, 2003. Plaintiff contends that, even if the non-examining doctors' reports were accurate, the ALJ should have obtained an updated consultative evaluation in light of the amount of time that had passed between those opinions and the

ALJ's decision, particularly given that he continued to be prescribed psychotropic medication. Plaintiff acknowledges that he was represented by counsel at the hearing and that counsel could have requested an updated evaluation had he believed one necessary, but he points out that the ALJ had a concomitant duty to ensure that the record was developed fully. Plaintiff also notes that the ALJ ignored the findings of his psychiatrist and counselor, Dr. Choksi. Thus, in light of the above, Plaintiff urges that his case should be remanded with instructions to obtain an updated consultative evaluation. (Doc. 22 at 6-8).

It is well-settled that the ALJ has a basic duty to develop a full and fair record. Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003). This obligation exists whether the claimant is represented by counsel or not. Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997); Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981). In light of this obligation, an ALJ must order a consultative examination when "such an evaluation is necessary for him to make an informed decision." Holladay v. Bowen, 848 F.2d 1206, 1209 (11th Cir. 1988) (quoting Reeves v. Heckler, 734 F.2d 519, 522 n.1 (11th Cir. 1984)); see also Wilson v. Apfel, 179 F.3d 1276, 1278 (11th Cir. 1999). However, case law in this circuit requires the Plaintiff to show some prejudice before a remand to the Commissioner for further development is ordered. See Graham, 129 F.3d at 1423.

Upon careful consideration, I find that the ALJ did not err by failing to order an updated consultative psychiatric evaluation. Here, the bulk of evidence regarding Plaintiff's mental impairments was from 2002, during which time Plaintiff was counseled at Pathways Counseling Center and was counseled on other occasions by Dan Sullivan, a psychology

intern, and by psychiatrist J. Choksi, M.D. See (R. 97-101, 120-25, 211-30). During this same period, however, one of Plaintiff's treating physicians, Dr. Christine Norton, indicated that Plaintiff did not have a mental impairment that significantly interfered with daily functioning. (R. 134). Further, in August 2002, a non-examining, state agency psychologist reported that Plaintiff's depression resulted in only a mild degree of functional limitation and was therefore non-severe, (R. 135-47), and, in January 2003, a non-examining, state agency psychiatrist indicated the same. (R. 231-43). Clearly, from Plaintiff's alleged onset date through January 2003 the ALJ had ample evidence upon which to base his decision and was not required to order a consultative evaluation.

After 2002, the records reflect that Plaintiff continued to take antidepressants but received no further counseling or psychological/psychiatric examinations.[1] Moreover, treatment notes from Bayside Health Care dated between September 12, 2003, and April 15, 2004, fail to support Plaintiff's claim. In particular, the doctors treating Plaintiff at that facility completed questionnaires wherein they consistently indicated that Plaintiff's judgement, insight and recent/remote memory were normal and that Plaintiff's affect was appropriate with no mood disorder. See (R. 257, 259, 261, 263, 265, 267, 269). None of the reports reflect concern over Plaintiff's mental state or suggest that mental health care was required. While those notes may not be significant in and of themselves because they were not from psychiatric/psychological providers, Plaintiff's failure to seek any further counseling

---

[1]Plaintiff submitted to the Appeals Counsel an intake summary for counseling services dated October 16, 2003. (R. 335-36). That record, however, was not before the ALJ and is not considered on this appeal. See Falge v. Apfel, 150 F.3d 1320, 1323 (11th Cir. 1998).

Case 8:05-cv-01531-TBM   Document 24   Filed 08/25/06   Page 9 of 15 PageID 98

or psychiatric treatment during that period belies his claim that a consultative evaluation was necessary for the ALJ to make an informed decision. On this point, it bears repeating that, ". . . the claimant bears the burden of proving that he is disabled, and consequently, he is responsible for producing evidence in support of his claim." Ellison, 355 F.3d at 1276. Also seriously undercutting Plaintiff's claim is the fact that, aside from sleep difficulties, he did not testify to any work-related (or otherwise) functional limitations resulting from his mental impairments at the administrative hearing.² Nor did his attorney at the time request that the ALJ order a consultative psychiatric evaluation. Under these circumstances, the ALJ had sufficient information to render his decision and cannot be faulted for not ordering a consultative evaluation. Furthermore, Plaintiff makes no attempt to establish any sort of prejudice resulting therefrom that would justify a remand on this ground.³

To the extent that Plaintiff relies Ford v. Sec'y of Health & Human Servs., 659 F.2d 66, 69 (5th Cir. Unit B 1981), his reliance is misplaced as the facts are distinguishable. In that case, the claimant testified that her primary impairment was mental, a report from a mental health clinic indicated she was unstable and unable to work, the ALJ did not make an express finding regarding the severity of her claimed mental impairment, and the ALJ denied her request for a consultative psychological evaluation. See id. at 68-69. Finally, as for Plaintiff's complaint that the ALJ ignored "the findings and notations" of his psychiatrist, J. Choksi,

---

²Plaintiff testified that he took medication for sleeping, pain and migraines. He did not testify that he was taking antidepressants. (R. 363).

³It is also worth noting that Plaintiff does not separately challenge the ALJ's step two non-severity finding.

9

M.D., the decision reflects otherwise. The ALJ addressed this doctor's treatment of Plaintiff but did give great weight to his opinion.[4] (R. 20). Notably, Plaintiff does not challenge the weight accorded this opinion.

By his second claim, Plaintiff argues that the ALJ erred in evaluating his fibromyalgia. In support of this argument, Plaintiff cites SSR 99-2p and Stewart v. Apfel, No. 99-6132, 2000 WL 33125958 (11th Cir. 2000) (unpublished), and states that the ALJ appears to have discredited his fibromyalgia-related complaints as "more likely than not self-reported without objective findings to account for such alleged severe pain." Plaintiff asserts that due to the nature of fibromyalgia, symptoms are necessarily self-reported and an absence of objective findings is to be expected. Plaintiff concedes that none of his doctors stated that he was disabled, but he points out that the record contains notes reflecting his complaints of symptoms to his doctors and none of his doctors indicated that he was exaggerating or malingering. Thus, Plaintiff urges that his case should be remanded for further consideration of his symptoms, and he suggests that his statements should be accepted as true. (Doc. 22 at 8-13).

Here, while Plaintiff undoubtedly suffers from diffuse muscular and joint pain and his doctors have assessed fibromyalgia, I am unable to conclude that the ALJ did not adequately evaluate his fibromyalgia and related symptoms such that a remand is required.

---

[4]Dr. Choksi counseled Plaintiff on five occasions between February 2001 and May 2001; diagnosed Plaintiff with a mood disorder secondary to multiple, chronic medical problems; continued Plaintiff on Paxil; and later prescribed Wellbutrin. Although he assigned a GAF of 55-60 on his initial meeting with Plaintiff, the mental status examination was essentially normal. See (R. 97-101).

Plaintiff cites SSR 99-2p, which primarily addresses chronic fatigue syndrome ("CFS"), for the proposition that, "even in cases where the claimant does not have the tender points sufficient to establish fibromyalgia syndrome, they 'will still be found to have a medically determinable impairment,'" and summarily contends that the ALJ did not adequately evaluate his fibromyalgia under that ruling. Because the ALJ in this case found that Plaintiff's fibromyalgia was a severe impairment and accurately recounted the medical evidence relating to it, Plaintiff's argument based on SSR 99-2p is not persuasive. Similarly, Plaintiff's citation to Stewart is unavailing. Plaintiff cites that case for the proposition that a treating physician's opinion that a patient is disabled due to fibromyalgia is valuable because there are no objective signs of severity and the physician must interpret the data. Here, no treating physician opined that Plaintiff was disabled. Notably, no such doctor opined that Plaintiff had physical limitations as a result of his fibromyalgia or restricted his daily activities. To the extent that Plaintiff suggests that the ALJ improperly discounted his fibromyalgia-related complaints on the basis of a lack of objective evidence, as noted more fully below, the ALJ did not rely solely on the lack of objective evidence in doing so. Nonetheless, it is significant that Plaintiff's doctors, who often completed checklists that included notations for gait, range of motion, and muscle strength, mainly indicated either that such were normal and/or did not indicate problems in such. See, e.g. (R. 152, 154, 170, 172, 257, 259, 261, 263, 265, 267, 269, 275). Additionally, Dr. Michael C. Burnette, a rheumatologist, noted that while Plaintiff had "some trigger points to palpation of the upper back musculature" and "some pain on palpation of the joints of the hands and wrists," and his examination was "consistent with a

11

fibromyalgia disorder," neurologic exam revealed no focal defects and his range of motion was intact in the shoulders, elbows, hips and knees, and a straight leg raising test was unremarkable. (R. 303). In conclusion, while Plaintiff undoubtedly experiences pain symptoms related to his fibromyalgia, the ALJ's consideration of his fibromyalgia was not inadequate.

By his third claim, Plaintiff argues that the ALJ erred by not accurately assessing his credibility. In particular, Plaintiff takes issue with the ALJ's citation to his ability to canoe, ride go-carts, go boating, go to the movies, and attend college as reasons for discounting his complaints of pain. Plaintiff urges that while activities may be an issue, the ALJ should have inquired into the duration, frequency and level of his involvement in those activities before discounting his complaints on that basis. Plaintiff also suggests that the ALJ's credibility finding is not supported by substantial evidence "because there is no logical correlation between the evidence the ALJ cites for discrediting Plaintiff's complaints and his conclusions." Thus, Plaintiff contends that his case should be reversed and remanded with directions to the ALJ to reevaluate his subjective complaints using proper analysis. (Doc. 22 at 10-12).

Where an ALJ decides not to credit a claimant's testimony about [pain], the ALJ must articulate specific and adequate reasons for doing so. Foote v. Chater, 67 F.3d 1553, 1561 (11th Cir. 1995); Jones v. Dep't of Health & Human Servs., 941 F.2d 1529, 1532 (11th Cir. 1991). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir.

1987). The lack of a sufficiently explicit credibility finding may give grounds for a remand if the credibility is critical to the outcome of the case. Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982). Thus, where credibility is a determinative factor, the ALJ must explicitly discredit the testimony or the implication must be so clear as to amount to a specific credibility finding. Foote, 67 F.3d at 1562.

At the outset, it is noted that the testimony developed at the administrative hearing regarding Plaintiff's specific functional limitations is not particularly well-developed.[5] Nonetheless, I am compelled to conclude that the ALJ's decision, when read as a whole and in conjunction with the medical record, reflects that the ALJ provided adequate reasons for rejecting the subjective evidence as disabling from all work.[6] Plaintiff is (partially) correct

---

[5]It again bears repeating that, although the ALJ has a duty to develop the record, ". . . the claimant bears the burden of proving that he is disabled, and consequently, he is responsible for producing evidence in support of his claim." Ellison, 355 F.3d at 1276; Ford, 659 F.2d at 69.

[6]To the extent that Plaintiff suggests that the ALJ failed to apply the appropriate standard when assessing his subjective pain complaints, I disagree. In this circuit, subjective complaints such as pain, fatigue or dizziness are governed by a three-part "pain standard" that applies when a claimant attempts to establish disability through subjective symptoms. By this standard, there must be evidence of an underlying medical condition and either objective medical evidence that confirms the severity of the alleged symptom arising from the condition or evidence that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991) (citing Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986)). Here, the ALJ expressly referenced this circuit's pain standard, the similar standard under the regulations, and the applicable ruling. See (R. 23). Thus, the ALJ credited Plaintiff with non-insulin dependent diabetes with early neuropathy, probable fibromyalgia suspect, disc protrusion of thoracic area of the spine, and cervical spondylosis (R. 19), conditions that reasonably could cause the type of pain and limitations alleged. However, in addressing the degree of such pain, the ALJ rejected it to the extent that it was alleged to be disabling. (R. 23-24).

13

that the ALJ found his complaints not entirely credible based on his daily activities. See (R. 24). He also is correct that the performance of sporadic or simple daily activities may not necessarily defeat a disability claim, see Lewis v. Callahan, 125 F.3d 1436, 1441 (11th Cir. 1997), and that reference to a claimant's daily activities in and of itself may not sufficiently support the rejection of a claimant's subjective complaints, see Foote, 67 F.3d at 1561. However, the regulations specifically direct the ALJ to consider a claimant's daily activities in evaluating pain complaints. See 20 C.F.R. §§ 404.1529, 416.929; see also Macia v. Bowen, 829 F.2d 1009, 1012 (11th Cir. 1984). Here, given the notations in the record (and Plaintiff's testimony) that Plaintiff attends school; goes to the movies; and has gone canoeing, kayaking, boating, and go-carting, the ALJ properly considered these activities when assessing the credibility of Plaintiff's testimony of disabling symptoms.[7] A fair reading of the ALJ's credibility determination demonstrates that the ALJ did not rely solely on Plaintiff's daily activities to discount his allegations of disabling pain. Rather, the ALJ also cited to the medical record as a whole, the fact that no doctor has opined that Plaintiff was disabled, and the dosage of Plaintiff's pain medication. (R. 24). While the ALJ did not reiterate the content of the medical reports at that time or contrast them to Plaintiff's specific complaints, he previously had discussed them in detail. See (R. 21-23). Thus, the reasons given by the ALJ

---

[7]For example, Plaintiff testified that he had injured his ribs on or around March 28, 2004, when he was fell out of a motorboat he was riding in with friends. (R. 349-50).

for discounting Plaintiff's complaints of disabling pain are rational and supported by the record.[8]

### IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence. The decision is affirmed. Accordingly, the Clerk is directed to enter Judgment in favor of the Defendant and to close the file.

**Done and Ordered** at Tampa, Florida, this 25th day of August 2006.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of record

---

[8]Further, although Plaintiff urges that he is/was disabled due to constant musculoskeletal and joint pain caused by fibromyalgia, he did not testify to any specific, work-related limitations at the administrative hearing.